IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK13-40421 |
| | ) | |
| NOELLE L. DeLAET, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| NOELLE L. DeLAET, | ) | ADV. PROC. A13-4032 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL COLLEGIATE TRUST, | ) | |
| | ) | |
| Defendant. | ) | |
| NOELLE L. DeLAET, | ) | ADV. PROC. A13-4033 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DISCOVER BANK, a/k/a | ) | |
| Discover Student Loan, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on January 22, 2015, on Plaintiff's complaint in each of the captioned cases. David P. Kyker appeared for Noelle L. DeLaet, and Aaron F. Smeall appeared for National Collegiate Trust ("NCT") and Discover Bank, a/k/a Discover Student Loan ("Discover"). The parties were given the opportunity to file closing briefs, and the matter is now ready for decision. This order contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

The two captioned cases were consolidated for trial and this order will be entered in each case. For the reasons set forth below, I find that Plaintiff has met her burden of proof of undue hardship and that judgment should be entered in favor of Plaintiff and against Defendants. The student loan obligations at issue in these adversary proceedings are discharged.

## *FINDINGS OF FACT*

The following facts are either undisputed or were established by the evidence admitted at trial.

1.      Ms. DeLaet is 28 years old, not married (although engaged to be married), with no dependants. She is in good physical health.

2.      Ms. DeLaet is a 2009 graduate of Nebraska Wesleyan University, having obtained a Bachelor of Fine Arts degree in Theater Arts and a Bachelor of Arts degree in English.

3.      To assist in funding her college education, Ms. DeLaet obtained the following student loans:

| DATE LOAN OBTAINED | LENDER | ORIGINAL PRINCIPAL BALANCE | APPROXIMATE BALANCE DUE |
|---|---|---|---|
| January 4, 2010[1] | Department of Education | Not in record | $27,045.19[2] |
| October 6, 2004 | National Collegiate Trust (NCT) | $21,390.37 | $34,260.51 |
| August 8, 2005 | NCT | $18, 601.06 | $24,979.11 |
| August 21, 2006 | NCT | $28,064.86 | $39,520.69 |
| September 8, 2008 | Discover Bank | $20,000.00 | $19,959.16 |
| Not in record | Bank of America | Not in record | $23,946.76[3] |
| Approx. Total | | | $169,711.42 |

---

[1]This is the date that two earlier loans with the Department of Education were consolidated for payment under the William D. Ford Direct Loan Program. The dates of the two original loans are not in the record.

[2]This is the balance due as of September 18, 2013, based on the stipulation in Adversary Proceeding No. A13-4034. The original loan amounts are not in the record.

[3]This is the balance due amount set forth in a stipulation filed in Adversary Proceeding No. A13-4035. Pursuant to the stipulation, this loan obligation has been discharged.

4.   Ms. DeLaet timely filed adversary proceedings seeking to discharge all of her student loans under the undue hardship provisions of 11 U.S.C. § 523(a)(8).

5.   The adversary proceeding against Bank of America (Adversary Proceeding No. A13-4035) was resolved pursuant to the terms of a stipulation filed September 30, 2013, under the terms of which the parties agreed that Ms. DeLaet should be discharged from her student loan indebtedness owed to Bank of America.

6.   The adversary proceeding against the United States Department of Education (Adversary Proceeding No. A3-4034) was resolved pursuant to the terms of a stipulation filed January, 12, 2015. Under the terms of that stipulation, the indebtedness in the amount of $27,045.19, as of September 18, 2013, plus accruing interest, was found to be nondischargeable in the underlying bankruptcy proceeding. Instead, Ms. DeLaet entered into a repayment agreement with the Department of Education under the terms of one of the income-based repayment plans offered by the federal government. Her payment under that repayment plan is approximately $215.00 per month. She testified that she entered into the repayment plan with the Department of Education because she has just enough disposable income to make that payment and after making the income-based payments for a period of 10 years while she is employed by the state, she would be eligible to have any remaining amount of her indebtedness to the Department of Education discharged without adverse tax consequences due to a special discharge program available to state employees.

7.   While in college, Ms. DeLaet worked part-time jobs, essentially for minimum wage, to assist with expenses. Following graduation, she struggled to find work in fields to which her degrees would be applicable. Ms. DeLaet testified she sent out hundreds of résumés and filled out hundreds of employment applications, both online and traditionally.

8.   Eventually, Ms. DeLaet did obtain employment in the child welfare field (which was not part of her degree program). From shortly after graduation in 2009 until February 2012, she worked for entities that contracted with the Nebraska Department of Health and Human Services. Ms. DeLaet essentially acted as a case worker helping children and families within the Department of Health and Human Services system. During this time, her rate of pay ranged from $12.42 to $16.00 per hour.

9.   Starting in March 2012, Ms. DeLaet has been employed by the State of Nebraska, first with the Department of Health and Human Services and, more recently, with the Nebraska Foster Care Review Office. During this time, she performed similar case management services as she did when she worked for contractors, and is currently a foster care review specialist. Ms. DeLaet's rate of pay in March 2012 was $15.85 per hour, but has increased to her present rate of $17.68 per hour.

10.   Ms. DeLaet has no savings to speak of, other than a mandatory retirement account with the State of Nebraska, having a balance of $5,812.51, in which she is vested to the extent of approximately 50%.

11.    Ms. DeLaet has not been actively seeking other employment since starting work for the Nebraska Foster Care Review Office in March 2014.

12.    Ms. DeLaet lives in a house with her fiancé, with whom she shares living expenses. Her share of the living expenses are as follows:

| EXPENSE | AMOUNT |
|---|---|
| Rent | $400.00 |
| Home maintenance, repair, upkeep | $45.00 |
| Electricity, heat, gas | $100.00 |
| Water, sewer, garbage | $20.00 |
| Food, housekeeping supplies | $350.00 |
| Clothing, laundry, dry cleaning | $45.00 |
| Medical, dental expenses | $65.00 |
| Transportation | $200.00 |
| Entertainment, recreation, similar miscellaneous expenses | $100.00 |
| Vehicle insurance | $93.00 |
| Car payment | $217.00 |
| Internet, cell phone, recycling | $137.39 |
| Miscellaneous expenses (toiletries, cosmetics, cleaning supplies, pet expenses, postage, gifts, irregular expenses) | $165.00 |
| TOTAL | $1,937.39 |

13.    Ms. DeLaet's monthly income after deductions for taxes, insurance, and mandatory retirement is $2,151.28.

14.    According to amended Schedule J, Ms. DeLaet's monthly net or disposable income (her combined monthly income minus expenses other than student loan debt) is $213.89.

15.    Ms. DeLaet testified that she took advantage of all known opportunities with NCT and Discover Bank to reduce her payments to the lowest amount she could pay. She managed to make payments on a somewhat regular basis to her student loan lenders until May of 2012, when the payments simply became too much for her to manage. At that point in time, she was told by NCT

collection agents that she was out of options for deferment or restructuring and that she would simply have to "find more income."

16.     Although Ms. DeLaet is in good health, she stated at trial that she has had some difficulty dealing with the emotional stress related to her inability to land a better-paying job and her inability to manage repayment of her student loan debt. She takes medication to help control her anxiety over her financial situation. In addition, because Ms. DeLaet's mother is a co-signer on the loans at issue, her inability to pay has strained her relationship with her mother. Finally, her financial situation has affected her relationship with her fiancé, who is reluctant to legally marry while the large student loan debt is outstanding.

## *DISCUSSION*

Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for student loans, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]" In contrast to many other types of debts, § 523(a)(8)'s exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). A debtor's obligation on a student loan remains unless there has been an express determination that the loan is dischargeable because it imposes an undue hardship on the debtor and the debtor's dependents.

A debtor seeking a determination that her educational loan debt is dischargeable under § 523(a)(8) bears the burden of proving, by a preponderance of the evidence, that repayment of the loan would impose an undue hardship. *Parker v. Gen. Revenue Corp. (In re Parker)*, 328 B.R. 548, 552 (B.A.P. 8th Cir. 2005). "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used.

> We apply a totality-of-the-circumstances test in determining undue hardship under § 523(a)(8). Reviewing courts must consider the debtor's past, present, and reasonably reliable future financial resources, the debtor's reasonable and necessary living expenses, and "any other relevant facts and circumstances." The debtor has the burden of proving undue hardship by a preponderance of the evidence. The burden is rigorous. "Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living – then the debt should not be discharged."

*Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 779 (8th Cir. 2009) (citing *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554-55 (8th Cir. 2003)) (footnote omitted). Each category will be examined in turn.

*Past, Present, and Reasonably Reliable Future Financial Resources.*

Ms. DeLaet has been steadily employed in the child welfare field since graduation in 2009. In 2009, she made $12.42 per hour, presently makes less than $18.00 per hour, and anticipates only nominal cost-of-living raises in the future. Her efforts to find a better-paying job have included filling out literally hundreds of job applications with the only success being in the child welfare field. She has not had any success finding employment in her fields of study.

NCT and Discover suggest that Ms. DeLaet could possibly find a greater rate of pay using either her English or fine arts degrees, but presented no evidence to support that suggestion. They further suggest that Ms. DeLaet's failure to apply for a supervisor position a few months after starting her present job with the Foster Care Review Board somehow amounts to bad faith or should otherwise be considered in connection with her hardship determination. That suggestion is tenuous, at best. Ms. DeLaet adequately explained that she did not feel she had sufficient experience to apply for that supervisor position so soon after starting the job. As she said, she was still just learning her job and really was not qualified at that time to be a supervisor. NCT and Discover seem to believe that in order to qualify for a hardship determination, a debtor must apply for every possible job, whether qualified or not. That simply is not the law. NCT and Discover also argue that Ms. DeLaet "refused" to seek better-paying employment outside of Lincoln, Nebraska. That characterization takes some liberties with her testimony but, in any event, it should be noted that Lincoln is the second largest city in the state. As such, it is as good a place as any to seek a better-paying job.

Based on the evidence presented at trial, I find that Ms. DeLaet has made good-faith and consistent efforts over a number of years to find better-paying employment to no avail. Her past and present employment record indicates that she is likely to continue to be employed at a rate of pay similar to what she currently makes, with annual cost-of-living increases. I find no evidence to suggest that Ms. DeLaet has any opportunities available to earn a significantly higher rate of pay, nor has she passed up any such opportunities.

*Reasonable and Necessary Living Expenses.*

Ms. DeLaet shares living expenses with her fiancé. Her share of the expenses on Schedule J appears to be less than the expenses that would be available to her under the means test. The expenses reveal that she lives quite modestly and she testified that she does not engage in any extravagant spending. She does not often eat out at restaurants and pleasure expenses are non-existent.

The only expenses that NCT and Discover challenge on Ms. DeLaet's Schedule J are Internet ($32.39), cell phone ($93.00), recycling ($12.00), and postage/gifts/irregular expenses ($50.00) for a total of $187.39. They suggest that those expenses fall outside the definition of a minimal standard of living. I disagree. The standard of living needs to take into account the facts and circumstances of the debtor's life, including employment and living arrangements. For a 28-year-old adult who is employed full-time and sharing housing expenses, the items in this challenged category are certainly reasonable. Ms. DeLaet testified that she had almost all of her dealings with her loans "on line" and

it is silly to suggest that Internet and cell phone expenses are not reasonable and necessary in this digital age. I find no fault with this category of expenses.

When Ms. DeLaet's expenses are subtracted from her income, she has disposable income of approximately $214.00 per month before repayment of any student loan is considered. That number is not likely to get better in the foreseeable future as Ms. DeLaet's car is in need of substantial maintenance and repair (tires, heater, and electrical problems), and will likely need replacement sooner rather than later. Accordingly, I find that the expenses listed on Schedule J are all reasonable and necessary. The expenses are not likely to decrease in the future; rather they will likely increase.

*Other Relevant Facts and Circumstances.*

As discussed previously, Ms. DeLaet has changed jobs several times over the last several years in her attempts to find a better wage. Each job change has resulted in the added stress of learning a new position. That stress, combined with Ms. DeLaet's financial problems, including these student loans, have had a significant impact on Ms. DeLaet's emotional health. She takes medication to address the related anxiety and stress she endures. Her finances have also impacted her relationship with her mother and her relationship with her fiancé.

In addition, Ms. DeLaet has been offered the opportunity to pay her loan obligations to the United States Department of Education using an income-based repayment plan. Under that plan, she can be discharged from the Department of Education loans in as little as 10 years and without adverse tax consequences. NCT and Discover do not offer any similar income-based loan repayment and discharge program. Therefore, it was reasonable for Ms. DeLaet to settle the adversary proceeding seeking a discharge of the Department of Education loans (Adversary Proceeding No. A14-4034) for a monthly payment amount that is presently around $215.00 per month. After factoring in that payment, Ms. DeLaet has no further disposable income to pay against the loans at issue in this case.

NCT and Discover argue that Ms. DeLaet failed to try to negotiate further forbearance or deferment agreements with the defendants. However, Ms. DeLaet's testimony was quite clear – she took advantage of every forbearance and deferment option of which she was aware. In fact, in a phone conversation in 2012, Ms. DeLaet was told by collectors for NCT that she would just have to find more income. There was no evidence at all to suggest that Ms. DeLaet had any further deferment or forbearance opportunity with NCT and Discover and no evidence that any such opportunity was offered and rejected.

Finally, NCT and Discover argue that Ms. DeLaet's financial situation should improve when she marries her fiancé. However, that argument conveniently overlooks Ms. DeLaet's testimony that her fiancé does not want to get married while she has this student loan debt outstanding. She is not married at this time and, therefore, her fiancé's income (of which there was no evidence) will not be considered.

Ultimately, this case boils down to the Defendants' belief that, with time and a willingness to relocate, Ms. DeLaet might be able to find a better-paying job. Well, that might be true: given time and a willingness to relocate, she "might" be able to find a better-paying job – that is probably true of any employed person – but that is certainly not a reasonably reliable future financial resource. Also, what about the payments that are coming due in the meantime? The numbers are what they are – at this time, she does not have the net income to pay the loans owed to the Defendants. So, the debt just keeps getting larger and larger with default interest and capitalization and the Defendants can sue her to try to collect their debts.

Accordingly, I find that Ms. DeLaet does not have sufficient past, present, or reasonably reliable future financial resources to pay any of the loans owed to NCT or Discover. It would be an undue hardship on Ms DeLaet to exclude those loans from her bankruptcy discharge.

## *CONCLUSION*

For the foregoing reasons, I find that Ms. DeLaet has met her burden of proof for undue hardship under 11 U.S.C. § 523(a)(8), and her request for discharge of her student loan indebtedness is granted. Separate judgment to be entered.

DATED: February 25, 2015.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *David P. Kyker
    Aaron F. Smeall
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.